Our next case is Audio Evolution Diagnostics, Inc. v. United States, 23-1096. Mr. Corcoran, you reserve five minutes of time for rebuttal. Yes, Your Honor. Okay, you may begin. Thank you, Your Honor. Good morning. May it please the Court, Peter Corcoran for Audio Evolution Diagnostics, or AED. This Court should reverse the Court of Federal Claims for at least three reasons. First is the Court's denial of AED's motion to file a third amended complaint. The second is the Court's granting of the government's motion to dismiss, and the third is the Court's denial of AED's motion to amend the judgment. First, the Court of Federal Claims abused its discretion by denying AED's motion to file its third amended complaint based on the issuance of the 471 patent having nearly identical customizable display claims that issued about two weeks before the Court entered its judgment, granting the government's motion to dismiss. Why do you think that's a ground? I mean, almost by definition, our extremely large body of 101 decisions striking down and finding ineligibility is about patents that were, in fact, issued. So why is it particularly significant that language was accepted by the Patent Office? Well, Your Honor, if the Patent Office – if the courts can defer to the Patent Office on invalidating a patent, then why can't the courts defer to the Patent Office on issuing a patent? Because 101 is a question of law. I mean, who knows whether those patents they just issued are going to be valid. If they're identical to the ones you have, then they're probably going to be invalidated by somebody someday. This might have a bearing on that extremely interesting footnote in the government's brief, which probably is better talked about with the government, because the PTO may have a different view of the governing legal standards than are, in fact, the governing legal standards for us at this point. Yes, Judge Ronald, that was the reason that AED raised the issue is because the government raised – argued in its motion to dismiss that the PTO had issued an announced rejection for the claims in the 471 patent as evidence of why the claims in the 373 and 791 patents are invalid in their motion to dismiss. So our counter-argument was, well, now the Patent Office has issued a patent, so now that's prima facie evidence of the display claims being allowable or patent eligible in the Court of Federal Claims. Why? I mean, you may both agree that our precedent is wrong, but the Court of Federal Claims has to follow it. I mean, the PTO should be following it, too, but the fact that they issued a patent, particularly in this area, says very little about whether it's ultimately going to be found eligible as a matter of ground or 101. Counselor, I guess another way of looking at it is that almost all our 101 cases are on patents that were issued by the PTO. So the fact that they granted a patent doesn't give it a stamp that endures forever and protects it and shields it from 101 cases. In fact, the process in place is to correct errors by the PTO. So it's not the case that we are bound by what the PTO says. So maybe you can address Alice Step 1. Well, under Alice Step 1, Your Honor, the 373 and 791 patents recite an improvement in auscultation technology in that the invention is used to manipulate the processors for segregating frequencies, amplitudes, and diminishing noise, which was never before in the art. The improvement in that technology is that through the display, which is an unconventional display in itself, it's not just a generic display with no functionality, the user can create programs, for example, segregating frequencies and amplitudes that are intended to manipulate the digital signal processor, however the user needs at the time. So, for example, a doctor needs to listen to a lung sound, and he can hear a noise in the lung that's concerning to him. In the prior art systems, there would just be a regular stethoscope. You couldn't focus in on a particular frequency.  And you certainly wouldn't have a display showing in what frequency range the problem occurs. And so with that technology, AED improved the auscultation technology part. It's an interesting invention, that's for sure. And it appears to me that the claim advance of this is that it improves medical diagnosis by improving that are based on the sounds that the human body is making, like our stomach, our heart, our liver. I don't know, but that would be the claim advance. But your problem is going to have to get out of what we've been talking about here, where you're dealing with an abstract idea. And it could be that you advance out of step one and go to step two. But at step two, when I look at anything that's used in this, I just don't see anything that's not known. And I don't see anything that would lift the non-abstract idea under step one and transform that into something that's patent eligible. Well, certainly the unconventional display is not known. I mean, displays are known, but the specific claim language, if I could say so. What I found interesting about the display is that it changes what analog to digital, so now doctors can look at the sound that the human body is making in digital form. And it could be that that's of great use to the scientific body, no pun intended. Yes, but the display does more than just convert analog to digital. A user sitting at the interface can select programs at the interface for specifically segregating frequencies and amplitudes to focus in on problem areas or for whatever organ that he or she is analyzing at the time. So that would be the primary focus of the invention, and figures 4A through L show the result of that process where you can have 12 different ways of segregating the frequencies, amplitudes, and noise. If I could continue. Second, the court's denial of AED's motion to amend is based on its erroneous ruling granting the government's motion to dismiss. The court lists only claim 39 of the 343 patent and claim 17 of the 79-1 patent. After briefly discussing the background of the patents, the court does not list the claims as representative of all claims of the patents, but the government attempts to argue that AED asserted that the claims are exemplary of all the claims of the patents. That argument is slightly false and misleading, like many of the government's arguments in the case. So this is an interesting issue. So what was your response to this? Was there ever a notion whether these claims that we're looking at are representative of the invention? Did you dispute that, or did you add into that argument in any way? Yes, Trevor, we did dispute that. In our preliminary infringement contentions, we referred to claims 39 and 17 as merely exemplary of the infringement and not as exemplary of all the claims of the two patents. And so it's our position that the government misconstrued that analysis in the infringement contentions to say that, and basically you cover for the Court of Federal Claims' opinion, only pointing out claims 39 and 17, that those are the exemplary claims and they're not. Okay. Do you have room to rebuttal time? I reserve the time. Okay, thank you. Mr. Johnson? Good morning, Your Honor. May it please the Court. I think counsel's description of the invention at issue in the 343 and 791 patents illustrates exactly why the trial court got it right and determined these were directed to be. Can I try to get something out of the way? You know what it is. So if we affirm and the other side files either an unbound petition or a cert petition, what are you going to say? I'm not sure, Your Honor, what position we would take. Because your footnote says government's position is that our standards are wrong and under the right standard, the analysis done so far in this case would basically have to be redone. Your Honor, in the interactive wearables and Trophy Travel Sentry Cert petition, we did recommend to the Supreme Court that it clarify the standards that the Federal Circuit has used for analyzing one-on-one issues. However, at the same time, we noted that under the current body of case law, the result reached in interactive wearables was certainly correct under Federal Circuit precedent. The Supreme Court did not take up that case or clarify one-on-one further, so this Court's body of case law is still good law and illustrates that the trial court was correct in invalidating the standards. And if we say that and affirm and the other side seeks re-hearing en banc or cert from the Supreme Court, are you going to say, you know, deny it? Or, right, you should grant it because, in fact, all of our body, because our case law is wrong? I don't know what position the Solicitor General and the PTO would take on a hypothetical cert petition, in this case, if you were to affirm the trial court, Your Honor. And this is relatedly, in a way, that you think that our law is too favorable to defendants. This is not a jurisdictional point. Why aren't you waiving any rights that a defendant has here under any aspect of our one-on-one law that goes beyond what you think is correct? I think that this is still good law in the Federal Circuit. Right, but you could, I mean, a litigant can say there's some point that, you know, I could invoke, but I'm not going to invoke in the government of all parties with an interest in getting the law right. Why don't you waive the overbroad aspect, as you see it, of our one-on-one law? I mean, you didn't have to pay admission to dismiss our one-on-one. That's correct, Judge Hughes. I mean, if you thought this was eligible under the government's view rather than our view, why did you file it? I'm not sure it would be eligible under the position taken in Interactive Wearables and Traffic Travel Sentry. And as I said, in the event that there is a cert petition, I'm not sure what position we would take at that point. Well, I should let you get back to the merits. I realize this is not the most comfortable position in the world for you to be in at this point. That's okay, Judge Toronto. As I was saying, I think counsel's description of the invention and issue in the 643 and 701 patents illustrates why they are patent-eligible under this Court's body of one-on-one case law. As you described, kind of the core, the focus of these patents is this idea that instead of a doctor who might be unfamiliar with textually programming functions to be carried out on the signal, can now use this kind of drag-and-drop graphical programming interface. You select an icon representing a particular filter. Does the patent make clear or is it undisputed that there were, before this patent, visual representations of sound signals? It does concede that those were known in the prior art, Your Honor. And, in fact, it actually concedes that a prior assultation system used the exact same DAISYLAB software that's used to create the graphical programming interface in the claimed invention of the 343 and 791 patents. That's at Appendix 734 and Appendix 083. So your position is that there is no real advance in the claim? There's no advance in this technology that can be found in the claim? That's correct, Judge. There's no technical advance, no technical improvement found anywhere in the 343 and the 791. What about the claim, for example, that one of the things that the invention does, it reveals or utilizes bodily sounds and eliminates a lot of the ambient noise and therefore gives you a more clear, more concise, precise sound? I remember that argument from the briefs, Your Honor. We have two responses on that. One is we're looking at the claims of the 343 and the 791. The claims of the patents don't actually require or describe any ambient noise cancellation. They merely require multiple sensors, microphones. One is placed on the surface of the patient's body, and the other one can just be a microphone anywhere. So the claimed invention itself, when we're doing the one-on-one analysis, doesn't require or claim ambient noise cancellation. And further, let's assume there was a claim directed to ambient noise cancellation that said in addition to having these multiple microphones, the sound from one that's ambient noise cancels out the other. That, too, is something that they concede in the provisional application, which is incorporated by reference in its entirety into both the 343 and the 791. That was known in the art as well. There were prior assultation systems that used multiple microphones. There were prior assultation systems that canceled out ambient noise. And this is something that's in the intrinsic record of the patents themselves. So it simply can't be an inventive concept, and it illustrates why the trial court was correct to deny leave to further amend and file a third amended complaint because of all the concessions in the intrinsic record itself, no matter which claim they point to, you can't contradict what the intrinsic record says, as this court held in the Sanderling case. No amendment is going to cure what the patent itself already states. Why do you think PTO issued this new patent? It's not substantially different than what the court found eligible, is it? It is not substantially different. I know you don't like it. You're not from the PTO. That's true, Your Honor. It seems like it ignores our precedent. I agree that the issuance of the patent, which this court refused to know about, that should have been a one-on-one issue that was maintained instead of dropped. I'm not sure the examiner was even aware there was this one-on-one dispute over these two patents pending while the application was sold to the Patent Office. And I'd also like to briefly address the issue of the representative claims that counsel discussed. I think some history of the procedure in this case would be illustrative of why those were exemplary. The original complaint had detailed claim charts, which covered nearly every claim of the 343 and the 791 patents. We moved to dismiss that original complaint. They filed these First and Second Amendment complaints that, while they only expressly asserted claim 39 of the 343 and 17 of the 791. I'm not sure that's quite right. I thought the relevant language is at least those claims. Yeah, that's correct. You're correct, Your Honor. At least those claims, the 39 and the – claim 39 of the 343 and claim 17 of the 791. That's what brings them all into the case, actually. That's correct. But they continued to argue for the patentability of the remainder of the claims, for example, claims that contain that customizable display language that – other than the 39 and the 17. And as our briefing notes, they noted that those claims were exemplary of the government's infringement. So I think that's why the trial court noted that it found that argument a bit disingenuous. That's on page 6 of the appendix, where they continue to argue for patentability of these patents in their entirety and reserve the right to assert all the claims of each of the 343 and the 791. But then when the court issued this adverse decision on patent eligibility, asked the court then to pull back its ruling and limit it to only those two claims, despite arguing for the patentability of the claims as a whole. Thank you, Your Honors. Thank you. Mr. Corcoran, we're going to be starting back. Well, you've got four and a half minutes. I don't need it all, Your Honor. I just want to address the issue of the exemplary claims. In the court's opinion, there was no discussion of the display language, which is why we requested that the court cabin its judgment to the claims that were listed in the opinion, because there was no analysis of the display claims, which are a different scope. So it would only be fair that the court found claims 39 and 17 as invalid and the display claims are left alone because that scope was not addressed in the court's opinion. I have nothing further if you have any questions. Thank you, sir. We thank all the parties for their arguments this morning. In this case, they're all taking an advisement, and the court stands in recess.